UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

AMBER JACKSON,
on behalf of herself and
all others similarly situated,

        Plaintiff,                    Case No. 22-cv-1218

    v.

FIS MANAGEMENT SERVICES, LLC

        Defendant

---

## BRIEF IN SUPPORT OF JOINT MOTION
## FOR PRELIMINARY SETTLEMENT APPROVAL

---

Plaintiff, Amber Jackson, on behalf of herself and all others similarly-situated, and Defendant, FIS Management Services, LLC, jointly submit this *Brief in Support of their Joint Motion for Preliminary Settlement Approval*.

## <u>INTRODUCTION</u>

The parties' Settlement Agreement, titled "Settlement Agreement and Release," attached as Exhibit 1 to the parties' *Joint Motion for Preliminary Approval of Settlement*, (ECF No. 30) (hereinafter simply, the "Settlement Agreement"), is a fair, reasonable, and adequate resolution of a *bona fide* wage dispute because it fully satisfies this Court's criteria for class and collective action settlements.

As such, the parties respectfully request that this Court:

1.     Preliminarily approve the Settlement Agreement as a fair, reasonable, and adequate resolution of a *bona fide* wage dispute;

2. Certify, for settlement purposes only, this case as a collective action under 29 U.S.C. § 216(b) and a class action under FED. R. CIV. P. 23;

3. Appoint Amber Jackson as Class Representative;

4. Appoint Walcheske & Luzi as Class Counsel;

5. Approve the Notice Packet and Consent to Join Form in the form set forth in Exhibits 3 and 4 of the Settlement Agreement for distribution to all putative Settlement Class Members;

6. Find that the Notice Packet to be given constitutes the best notice practicable under the circumstances, including individual notices to all putative Settlement Class members who can be identified with reasonable effort, and constitutes valid, due, and sufficient notice to putative Settlement Class Members, in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution;

7. Direct that each putative Settlement Class Member who wishes to be excluded from the WWPCL Class must exclude him or herself no later than thirty (30) calendar days after the mailing of the Notice Packet ("Notice Period"), per the instructions set forth in the Notice Packet and that such exclusion must be received by the dates set forth in the Court's Preliminary Approval Order;

8. Direct that any Settlement Class Member who wishes to participate in the FLSA Collective must submit a Consent to Join Form during the Notice Period.

9. Direct that any Settlement Class Member who timely submits a Consent to Join Form during the Notice Period and who becomes part of the FLSA Collective will be bound by this Agreement and shall release all FLSA claims in the event the Court issues a Final Order approving the Settlement;

10. Direct that any Settlement Class Member who remains part of the WWPCL Class by not excluding himself or herself during the Notice Period per the instructions set forth in the Notice Packet will be bound by this Agreement and shall release all WWPCL claims in the event the Court issues a Final Order approving the Settlement;

11. Schedule a Fairness Hearing approximately ninety (90) days after entry of the Preliminary Approval Order to determine whether the Settlement Agreement should be finally approved as a fair, reasonable, and adequate, resolution of a *bona fide* wage dispute and whether the proposed Final Order Approving the Settlement should be entered;

12.    Direct that Class Counsel shall file any remaining Motions – including a Motion for Attorneys' Fees and Costs, a Motion for Plaintiff's Service Payment, and a Motion for Final Settlement Approval – at least twenty-one (21) calendar days prior to the Fairness Hearing and that the Court shall determine at the Fairness Hearing the amount of attorneys' fees, costs and administration-related fees and costs that shall be awarded to Class Counsel; and

13.    Direct that any member of the putative Settlement Class who wishes to object to the Motion for Attorneys' Fees and Costs, Motion for Plaintiff's Service Payment, and/or Motion for Final Settlement Approval – file the same no more than (60) calendar days after the mailing of the Notice Packet in accordance with the instructions set forth in the Notice Packet.

(ECF No. 30.)

## BRIEF STATEMENT OF FACTS AND PROCEDURAL POSTURE

On October 17, 2022, Plaintiff, Amber Jackson, filed her Complaint in this matter against Defendant, FIS Management Services, LLC, (ECF No. 1), alleging claims under the FLSA and under Wisconsin's Wage Payment and Collection Laws, WIS. STAT. § 109.01 *et seq.*, WIS. STAT. § 104.01 *et seq.*, WIS. STAT. § 103.001 *et seq.*, Wis. Admin. Code § DWD 274.01 *et seq.*, and WIS. ADMIN. CODE § DWD 272.001 *et seq.* ("WWPCL"). Plaintiff alleges that Defendant shaved time from said employees' weekly timesheets for pre- and post-shift hours worked and/or work performed including at an overtime rate of pay for all hours worked in excess of forty (40) in a workweek in violation of the FLSA and WWPCL (ECF No. 1, *passim*.)  Defendant denies all allegations and states that all employees were paid properly.

Thereafter, the parties conducted extensive written discovery and conducted depositions of Defendant's employees. The parties sought multiple extensions of time for Plaintiff to file her motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) in order for the parties to engage in substantive settlement discussions.

## SETTLEMENT BACKGORUND

In October 2023, counsel for the parties began discussing the parameters of early settlement resolution in earnest. Counsel for the parties debated and analyzed their respective legal arguments and factual positions, and they concluded that the prospect of resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including further written discovery, depositions, representative class discovery, motion practice and potentially trial by jury.

Between approximately October 27, 2023 and November 29, 2023, counsel for the parties communicated directly and engaged in substantive arms-length settlement negotiations with each other regarding legal authority relevant to Plaintiff's cause(s) of action and Defendant's defenses. Counsel for the parties, having engaged in significant written discovery (including Defendant's payroll records, Defendant's timekeeping data, and class-related information), created and exchanged detailed damages models and monetary settlement calculations, and discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement.

Between approximately October 27, 2023 and November 29, 2023, counsel devoted a substantial amount of time to legally and strategically discussing, analyzing, and debating the substantive and procedural aspects of this case. During this time, Defendant vigorously denied engaging in any wage and hour violations and contested many of Plaintiff's factual assertions and legal claims in the complaint. These arguments, combined with the complexity of the substantive legal issues and the class/collective procedural nature of the case, necessitated that counsel for the parties spend a substantial amount of time and effort advancing the case's legal theories and causes of action, developing the factual narrative, exchanging information and documentation, and engaging in good-faith communications towards resolution.

During this time, and after the parties exchanged monetary offers and preliminarily agreed on settlement terms and conditions, counsel for the parties worked directly to draft and finalize the Settlement Agreement. Ultimately, the Settlement Agreement was fully executed in January 19, 2024, and counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are a fair, reasonable, and adequate resolution of a *bona fide* wage dispute given all the considerations above.

## THE SETTLEMENT AGREEMENT

The parties' fully executed Settlement Agreement is attached to the parties' Joint Motion for Preliminary Approval of Settlement as Exhibit 1. (ECF No. 30-1.)

The primary terms and conditions of the Settlement Agreement are summarized below.

### A.    The FLSA Collective and Rule 23 Class

Because Plaintiff brought claims under both the FLSA and WWPCL, the case involves both collective action and class action procedures. Plaintiff's FLSA claims involve collective action procedures, and Plaintiff's WWPCL claims implicate the class action procedures under Rule 23. In accordance with the Settlement Agreement, the putative FLSA Collective is comprised of Collective Members, defined as:

> All current and former hourly-paid, non-exempt employees who worked for Defendant at any time between October 17, 2019, and July 1, 2023 who (i) were employed in a Customer Service, Fraud Associate, and/or similarly-titled position in Wisconsin, (ii) used Defendant's telephone system, which automatically synced with Defendant's electronic timekeeping system, to record hours worked and/or work performed each workday, and (iii) have timely returned Consent Forms in this action.

(*Id.*)

Likewise, the putative Rule 23 Class is comprised of Class Members, defined as:

> All current and former hourly-paid, non-exempt employees who worked for Defendant at any time between October 17, 2020, and July 1, 2023 who (i) were employed in a Customer Service, Fraud Associate, and/or similarly-

titled position in Wisconsin, (ii) used Defendant's telephone system, which automatically synced with Defendant's electronic timekeeping system, to record hours worked and/or work performed each workday, and (iii) do not timely exclude themselves from this action.

(*Id.*)

### B. Summary of Settlement Agreement's Terms

*Payments to FLSA Settlement Class and Wisconsin Settlement Class Members*

As settlement of this matter, Defendant has agreed to pay a maximum amount of $119,077.30. (*Id.* at ¶ 2.) After deducting Court-approved attorneys' fees and costs to Plaintiff's counsel in the amount of $45,177.30 (*id.* at ¶ 4.), and a Court-approved Service Award to Plaintiff in the amount of $10,000.00 (*id.* at ¶ 5.), the parties anticipate that the Settlement Class will be entitled to a maximum amount of $63,900.00. (*Id.* at ¶ 3.)

Regarding the Settlement Class, the allocation of payments to these members was determined by a detailed review of Defendant's payroll and timekeeping data as well as additional written documents applicable to the 213 Settlement Class Members, and each Settlement Class Member will receive a *pro rata* amount of estimated total aggregate wages allegedly due, inclusive of liquidated damages. (*Id.*) Said amounts were computed by Plaintiff's Counsel from a review of Defendant's timekeeping and payroll data as well as other applicable documents and assumes for settlement purposes that Settlement Class Members performed an estimated four (4) minutes per day (three (3) minutes pre-shift boot-up time and one (1) minute post-shift boot-down time) over fifty-four (54) workweeks at a rate of $17.51 which was uncompensated. Depending upon their participation, each employee will receive a maximum recovery of $300.00.

*Notice to Putative Class Members*

Plaintiff's Counsel will deliver to all members of the putative Settlement Class, by U.S. mail and within ten (10) calendar days of receipt of the Class List from Defendant, a copy of the

Notice Packet and Consent to Join Forms (attached as Exhibits 3 and 4) to the Settlement Agreement), as approved by the Court, setting forth the settlement terms, procedure for submitting a timely valid Consent to Join Form, a procedure for excluding oneself from the settlement, and the procedure for making an objection to the settlement. (ECF No. 30-1, Ex. 3.) For any Notice Packet which is returned as non-deliverable, Plaintiff's Counsel will undertake reasonable diligence to identify a proper current address for members of the Settlement Class whose Notice Packet was returned as non-deliverable and may re-mail the Notice Packet to all such members of the Settlement Class.

### *Service Award to Plaintiff*

For the services rendered to the Settlement Class members as part of this case, Defendant has agreed to pay Plaintiff a service award in the amount of up to $10,000.00 from the Gross Settlement Amount. (ECF No. 30-1, ¶ 5.) Plaintiff's Counsel will Motion the Court for this service award, which Defendants will not oppose. (*Id.*)

### *Attorneys' Fees and Costs*

Defendant has agreed to pay Plaintiff's counsel up to a total monetary amount of $45,177.30 for attorneys' fees and costs, which consists of $39,692.43 in attorneys' fees and a maximum amount of approximately $5,484.87 in costs. (ECF No. 30-1, ¶ 4.) Payment of Plaintiff's Counsel's attorneys' fees in the amount of approximately $39,692.43 represents one-third (33.33%) of the total settlement amount, which is less than Plaintiff's Counsel's written fee arrangement with Plaintiff and consistent with the approach for approval taken by federal courts in this State. Further, reimbursement of Plaintiff's Counsel's costs in a maximum amount of approximately $5,484.87 is also in accordance with Plaintiff's Counsel's written fee arrangement with Plaintiff and consistent with the approach for approval taken by federal district courts in this

State. Plaintiff's Counsel will Motion the Court for payment of attorneys' fees and costs, which Defendants will not oppose. (ECF No. 30-1, ¶ 4.)

<u>*Release of Claims*</u>

As consideration for the payments in accordance with the Settlement Agreement, Plaintiff and the Settlement Class Members, depending upon their level of participation (collectively "Releasors"), will release and discharge Defendant and their predecessors and successors, parents, subsidiaries, divisions, and affiliates, and all of each such entity's officers, directors, shareholders, managers, members, claimants, insurers, agents, attorneys and assigns, in their individual and representative capacities (collectively "Releasees"), from any and all causes of action pursuant to the FLSA and/or WWPCL. (ECF No. 30-1, ¶¶ 9-10.)

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE

Resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). The standards for approval of the settlement of FLSA collective actions "track the considerations that the court must weigh for reviewing proposed class action settlements under Rule 23." *Smoot v. Wieser Bros. Gen. Contractors, Inc*., 2016 WL 1736498, at *6 (W.D. Wis. Apr. 29, 2016).

Under the FLSA, employees can bargain, waive, or modify their rights if the court approves of the parties' settlement as a fair and reasonable resolution of a bona fide dispute over alleged violations of the FLSA, and the Court then enters the settlement as a stipulated judgment. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). An FLSA settlement requires court approval to be valid and enforceable. *Walton v. United Consumers Club, Inc*., 786

F.2d 303, 306 (7th Cir. 1986).

Under the WWPCL, a class action settlement may be approved under Rule 23 if: (1) the individual class members are afforded an opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Rule 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.,* 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted).

The Seventh Circuit considers the following factors when determining whether a proposed class action settlement is fair, adequate, and reasonable: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd sub nom. California Pub. Employees' Ret. Sys. v. Felzen*, 525 U.S. 315 (1999)).

Ultimately, at the preliminary approval stage, the Court's task is to determine whether the proposed settlement is "within the range of possible approval" so as to warrant sending notice to class members and proceed with a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

Here, the parties' Settlement Agreement satisfies all of the requirements and factors articulated above and is therefore appropriate for preliminary approval.

## A. The Strength of the Case Vis-à-Vis the Settlement Amount

The first settlement-approval factor is "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.* 463 F.3d 646, 653 (7th Cir. 2006). In this case, the parties have thoroughly investigated and analyzed Plaintiff's claims against Defendant under the FLSA and WWPCL, and while the parties nonetheless maintained a strong belief in their respective legal and factual positions and on the possibility of class and collective certification (and/or de-certification), they recognized that the prospect of expeditious resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including numerous additional depositions, motion and trial practice. The time and expense associated with briefing and hearings on collective and class certification alone would have been substantial, further supporting the parties' decision to enter into settlement negotiations, resulting in the parties' Settlement Agreement.

In order to fully and finally resolve this matter, Defendant has agreed to pay a maximum amount of $119,077.30, (ECF No. 30-1, ¶ 2), which includes all payments to Settlement Class members, (*id*. at ¶ 3.A-B), Plaintiff's Counsel's attorneys' fees and costs, (*id.* at ¶ 5), and Plaintiff's Service Payment. (*Id.* at ¶ 4.)

The parties anticipate that the Settlement Class will be entitled to a maximum amount of $63,900.00. The allocation of payments to these members equals a *pro rata* amount of the total estimated unpaid wages, including overtime wages, as described above. Thus, the overall balance supports approval of the Settlement Agreement.

## B. The Complexity, Length, and Expense of Litigation

The complexity, expense, and length of continued litigation weigh in favor of approving the Settlement Agreement. Both parties acknowledge the continued time, effort, expense, and risk of litigation. This litigation would have spanned hundreds of employees. Litigation of this matter

through conditional certification, final certification and/or de-certification, dispositive motions, and ultimately trial would have required considerable time, effort, expense, including retention of expert witnesses, with continued risk for both sides. With this in mind, from all parties' perspective, settlement is favored.

### C.     The Absence of Fraud or Collusion in the Settlement

This case involves a *bona fide* dispute over whether Defendant violated the FLSA and WWPCL as alleged by Plaintiff. The ultimate resolution, embodied in the Settlement Agreement, was the result of time-consuming arms-length negotiations between counsel for the parties. Given these considerations and based on the substantial sums to be paid to Plaintiff and the Settlement Class members in accordance with the Settlement Agreement, it is clear that there was no fraud or collusion. The settlement will provide Plaintiff and the Settlement Class Members with a fair recovery while eliminating the risks and costs both sides would bear if this litigation continued to a resolution on the merits.

### D.     The Lack of Opposition to the Settlement

The parties are unaware of any opposition to the settlement at this time.

### E.     Counsel's Opinion

Counsel for the parties support the settlement. As experienced practitioners in the area of wage and hour class and collective actions, counsel for both parties recognized the uncertainty of proceeding through dispositive motions and trial, and they have sought a fair and equitable compromise to resolve this matter. Despite their divergent views regarding Plaintiff's allegations, counsel for the parties engaged in arms-length negotiations between October 27, 2023 and November 29, 2023, and ultimately reached a settlement embodied in the Settlement Agreement that they consider to be fair, reasonable, and adequate given all the considerations above.

### F.    The Amount of Discovery and Stage of Proceedings

Between approximately December 19, 2022 and June 7, 2023, counsel for both parties communicated, corresponded, and engaged in a thorough and substantive exchange of information relevant to Plaintiff's cause(s) of action and Defendant's defenses via formal written discovery and depositions. Defendant provided Plaintiff with voluminous payroll and timekeeping data for which was necessary to fully and fairly evaluate the claims of putative FLSA Collective and WWPCL Class members. Plaintiff's counsel spent copious amounts of time reviewing the information, documentation, and data provided by Defendant's Counsel and creating their own damages projections and calculations. During this time, counsel for the parties also discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement.

Over the course of the case, the parties have had ample time and information to evaluate the risks of continued litigation vis-à-vis settlement. Additional discovery proceedings would not help to materially crystallize the parties' positions any further, and after exchanging monetary offers and preliminarily agreeing on settlement terms and conditions, counsel for the parties worked directly to draft and finalize the settlement agreement. Ultimately, counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate given all the considerations above.

## II.    FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED CLASS SHOULD BE CERTIFIED

Rule 23(a) requires that, in order for a class to be certified, the following elements must be met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class. In this case, all four elements of Rule 23(a) are met.

Additionally, Plaintiff must satisfy one of the elements of Rule 23(b). Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. In this case, the elements of Rule 23(b)(3) are met.

## A. The Numerosity Requirement of Rule 23(a)(1)

The numerosity requirement of Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663-4 (7th Cir. 2004). While there is no explicit cut-off for numerosity, the Seventh Circuit has found classes of forty (40) individuals sufficient. *See, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969).

This case meets the numerosity requirement of Rule 23(a)(1) because there are two hundred and thirteen (213) putative Settlement Class Members who were employed by Defendant during the statutory period. (ECF No. 30-1, Ex 1.)

## B. The Commonality Requirement of Rule 23(a)(2)

Rule 23(a)(2) requires that class members share a common question of law or fact. This element is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also Suchanek v. Sturm Foods*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.")); *Williams-Green v. J. Alexander's Rests., Inc.*, 277

F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims…arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).").

This case meets the requirement of Rule 23(a)(2) because Plaintiff maintains that she and the Settlement Class Members have identical wage-and-hour claims arising under the same statutes—the FLSA and WWPCL—based upon similar allegedly unlawful pay practices applicable to the Class as a whole, to wit, Plaintiff alleges that Defendant failed to compensate them for pre- and post-shift hours worked. (ECF No. 1, *passim*.)

### C.      The Typicality Requirement of Rule 23(a)(3)

The typicality requirement of Rule 23(a)(3) is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The Seventh Circuit has held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citations and internal quotation marks omitted); *see also De La Fuente v. Stokley-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983). Stated another way, the class representative's claims must have "the same essential characteristics" as the class members' claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Further, typicality element of Rule 23(a)(3) focuses on the Defendnts' actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

In this case, Plaintiff is a member of the Settlement Class, and the legal theories advanced by Plaintiff applies equally to Settlement Class Members she seeks to represent, *i.e.* Defendant failed to compensate Plaintiff and all other similarly-situated current and former hourly-paid, non-exempt CSRs/Fraud Associates for all hours worked including hours worked in excess of forty

(40) in a workweek in violation of the FLSA and WWPCL. Because Plaintiff's claims involve the same legal theories and arise from the same alleged course of conduct that gives rise to the claims of the Settlement Class Members, the Rule 23(a)(3) typicality element has been satisfied.

### D. The Adequacy of Representation Requirement of Rule 23(a)(4)

The adequacy of representation element under Rule 23(a)(4) consists of two parts: (1) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013).

In this case, both considerations are met because Plaintiff and Plaintiff's counsel have and will continue to provide fair and adequate protection for the interests of the Settlement Class as required by Rule 23(a)(4). Plaintiff understands the obligations of a class representative, and Plaintiff's counsel is experienced with complex federal wage and hour litigation by virtue of successfully representing dozens of individuals in single-plaintiff and multi-plaintiff wage and hour actions in this District. Plaintiff has no interests antagonistic to those of the Settlement Class. Plaintiff seeks, on behalf of herself and the Settlement Class Members, money damages pursuant to the FLSA and WWPCL as a result of Defendant's alleged unlawful pay practices. Given the identity of claims, there is neither the potential for conflicting interests nor any antagonism between the interests of Plaintiff and Settlement Class Members.

### E. The Predominance Requirement of Rule 23(b)(3)

Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ. Of Chi.*, 797 F.3d 426, 444

(7th Cir. 2015) ("Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense."). To make this determination, the court must consider the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Rule 23(b)(3)(A)-(D).

The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Put differently, is the putative class sufficiently cohesive to warrant adjudication by representation? *See, e.g., Blihovde*, 219 F.R.D. at 620 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

In this case, and while the Settlement Class Members may have a theoretical interest in controlling their own legal claims, they also have an interest in resolving their claims efficiently. The proposed Settlement Agreement provides that efficiency. Indeed, the Seventh Circuit has held that a class action is an efficient and effective way to obtain relief for individual class members. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Further, when challenging a uniform policy, as Plaintiff challenges Defendant's uniform compensation policies and practices in this case, the validity of those policies predominate over individual issues and class certification is appropriate particularly where a single payroll process was utilized by Defendant. *Id*. (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 147 n. 20

(1982)). Individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id*.

The Settlement Agreement resolves the parties' dispute(s) regarding Defendant's allegedly unlawful compensation policies and practices regarding Defendant's non-neutral timekeeping software. Because Plaintiff has alleged that these compensation policies and practices were uniformly applied to all putative Settlement Class Members at Defendant and because the parties' Settlement Agreement resolves their disputes over these practices, common issues predominate in this matter, and this element under Rule 23(b)(3) is met.

### F.     The Superiority Requirement of Rule 23(b)(3)

The superiority requirement under Rule 23(b)(3) requires Courts to consider: (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class.

In this case, there is no other related litigation pending, consolidating all the claims before this Court is efficient and desirable, and there will be no difficulties in managing this class action in light of the parties' settlement. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

Finally, a class is the superior method for resolving this case because there is no prejudice to any Settlement Class members: any member who prefers to litigate his or her legal claim(s) separately may opt out of the Settlement Class during the notice process. Settlement Class resolution is desirable in this case given the size of the Settlement Class and the nature of the alleged violations. Defendant's challenged compensation policies allegedly harmed each

Settlement Class Member but said members' individual interests in prosecuting these claims is limited by the relatively modest monetary value of each individual claim, which also makes adjudication of individual claims inefficient and unlikely. Even so, to the extent that any Settlement Class Member of prefers to litigate his or her legal claim(s) separately, the Settlement Class notice mechanism provides him or her the opportunity to do so.

## III.  FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED COLLETIVE SHOULD BE CERTIFIED

Courts have held that, where a plaintiff satisfies Rule 23 standards for class certification, that plaintiff also satisfies the standards for certification of a FLSA collective action. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.") (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)).

Accordingly, for settlement purposes only, the parties request that this Court certify an FLSA collective.

## IV.  THE PARTIES' NOTICE PLAN

Plaintiff's Counsel will cause the Notice Packet (attached as Exhibit 3 to the Settlement Agreement) to be delivered to all members of the putative Settlement Class, by U.S. mail within seven (7) calendar days of receipt of the Class List from Defendants. The Notice Packet, as approved by the Court, setting forth the settlement terms, procedure for submitting a timely valid Consent to Join Form, (attached as Exhibit 4 to the Settlement Agreement), a procedure for excluding oneself from the settlement, and the procedure for making an objection to the settlement.

(ECF No. 30-1, Exs. 3-4.) For any Notice Packet which is returned as non-deliverable, Plaintiff's Counsel will attempt to identify a proper current address for members of the putative Settlement Class who's Notice Packet was returned as non-deliverable and may re-mail the Notice Packet to all such members of the Putative Settlement Classes. (*Id*.)

Any member of the putative Settlement Class who intends to object to the fairness of the Settlement Agreement must, by the date specified in the Preliminary Approval Order file any such objections with the Court and provide copies of the objection to both Plaintiff's Counsel and Defendant's Counsel, as provided in the Notice Packet. (ECF No. 30-1, Ex. 3.) Any objection to the Settlement Agreement must include: (a) the objector's full name, address, and telephone number; (b) a written statement of all grounds for the objection accompanied by any legal and factual support for such objection; (c) a list of all persons who will be called to testify in support of the objection at the Fairness Hearing; and (d) a statement whether the objector intends to appear at the Fairness Hearing. If the objector intends to appear at the Fairness Hearing through counsel, the objection must also state the identity of all attorneys representing the objector who will appear at the Fairness Hearing. Any member of the putative Settlement Class who does not file a timely written objection to the settlement and notice of his or her intent to appear at the Fairness Hearing shall be foreclosed from seeking any adjudication or review of the settlement by appeal or otherwise. (*Id.*)

Similarly, any putative Settlement Class Member who wishes to be excluded from the WWPCL Class must submit a request for exclusion as set forth in the Class Notice by no later than thirty (30) days after mailing of the Notice Packet. Plaintiff's Counsel shall file any exclusion that it receives pursuant to this paragraph with the Court. Any putative Settlement Class Member who fails to submit a timely request to be excluded shall be subject to and bound by this Settlement

Agreement and every order or judgment entered pursuant to this Settlement Agreement and shall be deemed to have released their Wisconsin (WWPCL) wage and hour claims. (ECF No. 30-1, ¶ 9.)

## V. THE PARTIES' PROPOSED NOTICE PACKET AND MANNER OF DELIVERY ARE APPROPRIATE

In order to protect the rights of absent members of a Rule 23 class, the Court must provide the best notice practicable of the settlement to all class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). The Seventh Circuit has found that notice satisfies Rule 23 due process, and binds all members of the class, if it: (1) describes the essential terms of the settlement; (2) discloses any special benefits or incentives to the class representatives; (3) provides information regarding attorneys' fees; (4) indicates the time and place of the hearing to consider approval of the settlement and the method for objecting to and/or opting out of the settlement; (5) explains the procedures for allocating and distributing settlement funds; and (6) prominently displays the address of class counsel and the procedure for making inquiries. *See, e.g., Airline Stewards and Stewardesses Ass'n 550 v. Am. Airlines*, 455 F.2d 101, 108 (7th Cir. 1972) (holding that due process was satisfied by notice that explained the status of proceedings, significance of judicial approval of settlement, and opportunity to object at the hearing)). Likewise, "notice of FLSA claims must give potential class members enough information to make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Here, the parties' Notice Packet, which is attached to the Settlement Agreement as Exhibit 3, provides for Plaintiff's Counsel to distribute it via U.S. Mail to all putative Settlement Class members. The contents of the Notice Packet meet all of the six criteria set forth above, clearly identifying the options available to Settlement Class members and comprehensively explaining the nature and mechanics of the settlement.

The proposed manner of delivery of the Notice Packet is also sufficient. The Notice Packet will be sent via first class U.S. Mail to all putative Settlement Class members. If any Notice Packet is returned to the Plaintiff's Counsel as undeliverable, Plaintiff's Counsel will take other appropriate steps to identify a proper current address for the respective Settlement Class member. *See, e.g., Burns v. Elrod,* 757 F.2d 151, 154 (7th Cir. 1985); *Eisen*, 417 U.S. at 177 ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive the 'best notice practicable under the circumstances.'").

Accordingly, the parties' Notice Packet, which is attached to the Settlement Agreement as Exhibit 3, as well as the manner of delivery to all Settlement Class members, complies with Rule 23 and due process, and the Notice Packet and Consent to Join Form should be approved by this Court.

## VI. PLAINTIFFS' SERVICE AWARD

The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). The amount of the award can reflect the extent to which the class has benefitted from the named plaintiffs' efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In this case and prior to the Fairness Hearing, Plaintiffs will Motion this Court for approval of a Service Award of $10,000.00. Defendant will not oppose this request. (ECF No. 30-1, ¶ 5.) Plaintiff's Service Award in an amount of $10,000.00 is reasonable and is commensurate with other service awards approved by this District in multi-plaintiff FLSA collective cases that have resolved for monetary amounts similar to the total monetary settlement in this case. *See, e.g.,*

*Nande Yegger v. TRN Milwaukee*, Case No. 20-cv-144, ECF No. 21 (E.D. Wis. June 23, 2020) (Adelman, L.); *Cory Winter v. U.S. Paper Mills Corp., et. al.*, Case No. 19-cv-657, ECF No. 41 (E.D. Wis. May 7, 2020) (Griesbach, J.); *David Lee v. UL LLC*, Case No. 17-cv-1617, ECF No. 19 (E.D. Wis. November 25, 2019) (Griesbach, J.); *Johnson v. National Technologies, Inc.*, No. 18-cv-462, ECF No. 57 (E.D. Wis., July 22, 2019) (Jones, J.); *Nicole Dietzen v. Community Loans of America, Inc.*, Case No. 2018-cv-818, ECF No. 39 (E.D. Wis. May 15, 2019) (Griesbach, J.); *John Weninger v. General Mills Operations, LLC*, Case No. 2018-cv-321, ECF No. 93 (E.D. Wis. April 18, 2019) (Stadtmueller, J.); *Tracy Gerlach v. West Revenue Generation Services, et. al.*, Case No. 2018-cv-170, ECF No. 91 (E.D. Wis. January 3, 2019) (Griesbach, J.).

## VII.    PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND COSTS

Attorneys' fees and costs are recoverable under the FLSA, 29 U.S.C. § 216(b), and under the WWPCL, WIS. STAT. §109.03(6). The Seventh Circuit utilizes "common fund principles [to] properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994). Indeed, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Id.* at 563.

The Seventh Circuit utilizes a "market-based approach" to setting the percentage of a settlement fund to be awarded as reasonable attorneys' fees. *See, e.g., Silverman v. Motoroloa Sols, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (finding that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). In applying this standard, a court is not required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." *In re Synthroid*

*Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Ultimately: "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986).

In keeping with this approach, federal courts, including the federal Districts in this State, have repeatedly approved attorneys' fees in the amount of one-third (33.33%) of the common settlement fund in collective cases under the FLSA and class cases under the WWPCL, in addition to reimbursement of reasonable costs expended in the litigation, because such amounts are fair and reasonable, consistent with the market rate (in Wisconsin) for representation of plaintiffs in collective and class litigation under the FLSA and the WWPCL, respectively, and is consistent with, albeit slightly less than, Plaintiff's Counsel's agreement with Plaintiff. *See, e.g., Nande Yegger v. TRN Milwaukee*, Case No. 20-cv-144, ECF No. 21 (E.D. Wis. June 23, 2020) (Adelman, L.) (approving 1/3 contingency fee in multi-plaintiff FLSA settlement); *Cory Winter v. U.S. Paper Mills Corp., et. al.*, Case No. 19-cv-657, ECF No. 41 (E.D. Wis. May 7, 2020) (Griesbach, J.) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Thomas Melzer v. Pro Label, Inc.*, Case No. 18-cv-1080, ECF No. 37 (E.D. Wis. January 23, 2020) (Griesbach, J.) (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *David Lee v. UL LLC*, Case No. 17-cv-1617, ECF No. 19 (E.D. Wis. November 25, 2019) (approving 1/3 contingency fee in multi-plaintiff FLSA settlement); *Ehmann v. Pierce Mfg., Inc.*, 16-cv-247-WCG, ECF Nos. 143, 151 (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement); *Frank v. Gold Cross Ambulance Serv., Inc.*, 13-cv-1149-WCG, ECF Nos. 24, 31 (approving 1/3 contingency fee in multi-plaintiff FLSA and WWPCL settlement).

In this case and prior to the Fairness Hearing, Plaintiff's Counsel will Motion this Court and provide supporting arguments and declarations for approval of attorneys' fees and costs in the

total amount of $45,177.30, which consists of $39,692.43 in attorneys' fees and a maximum amount of $5,484.87 in costs. (ECF No. 30-1, ¶ 4.) Defendant will not oppose this request. (*Id.*)

## **CONCLUSION**

As such, the parties respectfully request that this Court:

1.  Preliminarily approve the Settlement Agreement as a fair, reasonable, and adequate resolution of a *bona fide* wage dispute;

2.  Certify, for settlement purposes only, this case as a collective action under 29 U.S.C. § 216(b) and a class action under FED. R. CIV. P. 23;

3.  Appoint Amber Jackson as Class Representative;

4.  Appoint Walcheske & Luzi as Class Counsel;

5.  Approve the Notice Packet and Consent to Join Form in the form set forth in Exhibits 3 and 4 of the Settlement Agreement for distribution to all putative Settlement Class Members;

6.  Find that the Notice Packet to be given constitutes the best notice practicable under the circumstances, including individual notices to all putative Settlement Class members who can be identified with reasonable effort, and constitutes valid, due, and sufficient notice to putative Settlement Class Members, in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution;

7.  Direct that each putative Settlement Class Member who wishes to be excluded from the WWPCL Class must exclude him or herself no later than thirty (30) calendar days after the mailing of the Notice Packet ("Notice Period"), per the instructions set forth in the Notice Packet and that such exclusion must be received by the dates set forth in the Court's Preliminary Approval Order;

8.  Direct that any Settlement Class Member who wishes to participate in the FLSA Collective must submit a Consent to Join Form during the Notice Period.

9.  Direct that any Settlement Class Member who timely submits a Consent to Join Form during the Notice Period and who becomes part of the FLSA Collective will be bound by this Agreement and shall release all FLSA claims in the event the Court issues a Final Order approving the Settlement;

10. Direct that any Settlement Class Member who remains part of the WWPCL Class by not excluding himself or herself during the Notice Period per the instructions set forth in the Notice Packet will be bound by this Agreement and shall release all

WWPCL claims in the event the Court issues a Final Order approving the Settlement;

11. Schedule a Fairness Hearing approximately ninety (90) days after the entry of the Preliminary Approval Order to determine whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the proposed Final Order Approving the Settlement should be entered;

12. Direct that Class Counsel shall file any remaining Motions – including a Motion for Attorneys' Fees and Costs, a Motion for Plaintiff's Service Payment, and a Motion for Final Settlement Approval – at least twenty-one (21) calendar days prior to the Fairness Hearing and that the Court shall determine at the Fairness Hearing the amount of attorneys' fees, costs and administration-related fees and costs that shall be awarded to Class Counsel; and

13. Direct that any member of the putative Settlement Class who wishes to object to the Motion for Attorneys' Fees and Costs, Motion for Plaintiff's Service Payment, and/or Motion for Final Settlement Approval – file the same at least fourteen (14) calendar days prior to the Fairness Hearing in accordance with the instructions set forth in the Notice Packet.

Dated this 19th day of January, 2024

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

*s/ David M. Potteiger*
James A. Walcheske, WI Bar No. 1065635
Scott S. Luzi, WI Bar No. 1067405
David M. Potteiger, WI Bar No. 1067009
WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail: sluzi@walcheskeluzi.com
E-Mail: dpotteiger@walcheskeluzi.com

JACKSON LEWIS P.C.
Counsel for Defendant

*s/ Tony H. McGrath*
Tony H. McGrath, WI Bar No. 1042806

JACKSON LEWIS P.C.
22 East Mifflin Street, Suite 800
Madison, Wisconsin 53703
Telephone: (608) 807-5274
E-Mail: Tony.McGrath@JacksonLewis.com

JACKSON LEWIS P.C.
Counsel for Defendant

**_s/ David A. Nenni_**
David A. Nenni, OH Bar No. 0080826
Jamie M. Goetz-Anderson,
OH Bar No. 0083562
Jackson Lewis P.C.
201 East Fifth Street, 26th Floor
Cincinnati, Ohio 45202
Telephone: (513) 898-0050
E-Mail: david.nenni@jacksonlewis.com